**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| TERRELL STATON | ) | 3:22-cv-855 (KAD) |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ADEYEMI JUXON-SMITH, et al., | ) | April 16, 2024 |
| *Defendants.* | ) | |

<u>MEMORANDUM OF DECISION</u>
**RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 53)**

Kari A. Dooley, United States District Judge:

The plaintiff, Terrell Staton ("Plaintiff" or "Staton"), filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the First, Fourth, Sixth, Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and several provisions of the Connecticut Constitution and state law. He named as defendants fourteen correctional officials and officers.

Upon initial review, the court, Bryant, U.S.D.J.,[1] dismissed the First, Fourth, Sixth, Ninth, and Fourteenth Amendment claims as well as the Eighth Amendment claims for deliberate indifference to medical needs. *See* First Initial Review Order ("IRO 1"), ECF No. 12. The court also declined to exercise supplemental jurisdiction over the state constitutional claims and the state law defamation claims. *Id.* The Eighth Amendment claim for use of excessive force and an associated state law claim for assault and battery against defendants Doyle and Juxon-Smith were permitted to proceed to service. *See id.* at 26.

Plaintiff then filed an amended complaint. *See* Am. Compl., ECF No. 17. The court conducted another initial review and determined that, in addition to the excessive force claim

---

[1] This case was transferred to the undersigned on November 15, 2023.

against defendants Juxon-Smith and Doyle, the case would proceed on a sexual harassment/sexual assault claim against defendant Anderson. *See* Second Initial Review Order ("IRO 2 "), ECF. No. 19 at 15. As Plaintiff did not re-allege the state law claim for assault and battery in the amended complaint, that claim is deemed abandoned. *See Shannon v. Venettozzi*, 749 F. App'x 10, 13 (2d Cir. 2018) ("'It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.'" (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Defendants Doyle, Juxon-Smith, and Anderson (together, "Defendants") have filed a motion for summary judgment on the ground that Staton failed to exhaust his administrative remedies prior to filing suit for these claims. Staton subsequently submitted several filings and motions, that the Court has liberally construed as opposition to Defendants' motion for summary judgment.[2] For the following reasons, the defendants' motion is GRANTED.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the

---

[2] Subsequent to Defendants' motion for summary judgment (ECF No. 53), filed on October 27, 2023, Plaintiff filed his opposition (ECF No. 60, February 9, 2024), a further objection to summary judgment that the court reads as an unauthorized sur-reply (ECF No. 62, February 20, 2024), his own motion for summary judgment (ECF No. 63, February 20, 2024), a motion titled "Motion to Strike, Objection to Defendants Summary Judgment" (ECF No. 64, February 20, 2024), and two jury demands (ECF Nos. 65 and 66, February 20, 2024). Though these oppositions were untimely (or unauthorized) under Local Rule 7(a) and introduce arguments or issues irrelevant to the instant motion, the Court has nonetheless considered them, and as required, has interpreted them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal citations omitted).

substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010). In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth "specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). He cannot "rely on conclusory allegations or unsubstantiated speculation[.]" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

Where, as here, the complaint is verified, it may be treated as an affidavit for summary judgment purposes only insofar as the statements are not conclusory and were made on personal

knowledge. *Curtis v. Cenlar FSB*, 654 F. App'x 17, 20 (2d Cir. 2016) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). Even nonconclusory statements in a verified complaint, however, "may be insufficient to create a factual issue where [they are] (1) 'largely unsubstantiated by any other direct evidence' and (2) 'so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of belief necessary to credit the allegations made in the complaint.'" *Jackson v. Onodaga Cnty.*, 549 F. Supp. 2d 204, 210 (N.D.N.Y. 2008) (citation omitted).

**Facts and Procedural History[3]**

On October 19, 2021, at Carl Robinson Correctional Institution, Staton had an encounter with correctional staff, during which defendant Doyle sprayed him with a chemical agent and defendant Juxon-Smith caused his bicep to be torn. Am. Compl. at 1. Also, during the incident, defendant Anderson "negligently engaged in touching and engaging in sexually inappropriate face smearing of the plaintiff[']s buttocks...." *Id.* at 5.

The Administrative Remedies Coordinator at Carl Robinson Correctional Institution reviewed the administrative remedies log for the period from July 2, 2021, through June 30, 2022.

---

[3] The facts are taken from Defendants' Local Rule 56(a) Statement and supporting exhibits with background from the Amended Complaint. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.
Defendants informed Staton of this requirement. *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment As Required by Local Rule of Civil Procedure 56(b), ECF No. 53-3. Despite this notice, Staton did not include a Local Rule 56(a)2 statement in any of his filings in opposition to Defendants' motion for summary judgment. Plaintiff's *pro se* status does not excuse him from complying with the Court's procedural and substantive rules. *See Evans v. Kirkpatrick*, No. 08-CV-6358T, 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2023) (citing *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *see also Jackson*, 549 F. Supp. 2d at 214 ("when a plaintiff is proceeding pro se, 'all normal rules of pleading are not absolutely suspended'") (citation omitted). Thus, Defendants' facts, when supported by the evidence of record, are therefore deemed admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1, or in the Court imposing sanctions....").

Defs.' Local Rule 56(a) Stmt. ("Defs.' Local Rule Stmt."), ECF No. 53-2 at 1–2, ¶ 6. Although Staton filed two administrative remedies during this period, neither concerned the October 19, 2021, encounter with the defendants. *Id.* During his deposition, Staton testified that he could not remember whether he filed an administrative remedy concerning the use of force and acknowledged that he did not file an administrative remedy concerning the alleged sexual assault. *Id.* at 2, ¶¶ 14, 16. In addition, the Prison Rape Elimination Act liaison at Carl Robinson Correctional Institution reviewed facility records and found no report of sexual harassment, abuse, or assault concerning Staton arising out of this incident. *Id.* at 3, ¶ 17.

**Discussion**

Defendants seek summary judgment on both claims on the ground that Staton did not exhaust his administrative remedies prior to bringing this suit. Alternatively, Defendants argue that the alleged touching of Staton's buttocks does not constitute a sexual assault and in any event, that Staton conceded at his deposition that he did not know who touched him.[4]

*Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular

---

[4] Insofar as the Court agrees with Defendants that Plaintiff's claims fail for failure to exhaust administrative remedies, the Court does not take up this latter argument.

episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion"; the inmate must use all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by ... making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *Jones*, 549 U.S. at 217-18 (citing *Woodford*, 548 U.S. at 93-95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001); *see*

*also Girard v. Chuttey*, 826 F. App'x 41, 44-45 (2d Cir. 2020) (inmate failed to exhaust administrative remedies because he commenced action in district court before appeal was decided or response period elapsed).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *Id.* at 643-44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. The Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430(RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

*Use of Excessive Force*

The general inmate grievance procedure for the Department of Correction is set forth in

Administrative Directive 9.6. *See* Defs.' Mem., Ex. B ("Dir. 9.6"), ECF No. 53-5 (version of Directive 9.6 in effect at the time of the incident). Thereunder, an inmate must first attempt to resolve the matter informally. He may attempt to verbally resolve the issue with an appropriate staff member or supervisor. Dir. 9.6(6)(a)(i)(2). If attempts to resolve the matter verbally are not effective, the inmate must make a written attempt using form CN9601 and send the form to the appropriate staff member or supervisor. Dir. 9.6(6)(a)(i)(2)–(3)*.* If an inmate does not receive a response to the written request within fifteen business days, or the inmate is not satisfied with the response to his request, he may file a Level 1 grievance on form CN9602. Dir. 9.6(6)(a)(ii).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *Id*. The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. Dir. 9.6(6)(b)(i)(3). The Unit Administrator may extend the response time upon notice to the inmate on the prescribed form. Dir. 9.6(6)(b)(i)(4).

If the inmate is not satisfied with the response to the Level 1 grievance, or if the Unit Administrator fails to dispose of the grievance in a timely manner, the inmate must appeal the disposition or such failure to Level 2. Dir. 9.6(6)(b)(ii). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. Dir. 9.6(6)(b)(ii)(1). The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was documented in the administrative remedies log. Dir. 9.6(6)(b)(ii)(2). The Level 2 reviewer for inmates in Connecticut correctional facilities is the appropriate District Administrator. Dir. 9.6(6)(b)(ii)(3)(a).

Level 3 appeals are only required for challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. Dir. 9.6(6)(iii)(1).

Defendants have submitted evidence, discussed below, that Staton filed administrative remedies around the time of the incident but did not do so regarding the October 19, 2021, incident which gives rise to this action. Thus, Defendants have established that administrative remedies were available to Plaintiff and he knew how to avail himself of the procedures.

On this issue, Staton testified at his deposition that he intended to appeal all aspects of the incident when he filed an appeal of the disciplinary finding which followed the incident—that he displayed flagrant disobedience immediately prior to the use of force. *See* Defs.' Mem. Ex. G, Deposition Tr. ("Staton Dep."), ECF No. 53-10 at 8.[5] However, the copy of the appeal of the disciplinary finding submitted by Defendants was not received until several months after the hearing. It was rejected for that reason. *See* Defs.' Mem. Ex. D, Administrative Appeal, ECF No. 53-7 at 3–4. Indeed, even though Staton dated the appeal form November 4, 2021, two days after the disciplinary hearing, he asserted in the appeal that he appealed on that same date using an incorrect form and that when he resubmitted the correct form, the appeal was not processed for many months. *See id*. at 2. In contrast, Staton conceded the late filing during his deposition. Staton Dep. at 12. However, even if Staton had timely filed his disciplinary appeal, which the Court need not decide, the mention of the alleged use of excessive force in his description of the incident would not have exhausted Staton's administrative remedies on this claim.

Under the PLRA, Staton was required to utilize all the steps required by the administrative review process and to do so properly. *See Jones*, 549 U.S. at 218. Courts have held that a

---

[5] The cited page numbers are the page numbers assigned by the CM/ECF system as reflected in the ECF header and not the page numbers marked on the documents themselves, if any.

disciplinary appeal can serve to exhaust administrative remedies where the issue on which the claim is based arose at or derives from the disciplinary hearing. *See, e.g., Hill v. Alicia*, No. 3:20-cv-00426(JAM), 2023 WL 197026, at *3 (D. Conn. Jan. 17, 2023) (citing cases holding that appeal of disciplinary findings can exhaust administrative remedies where claim is for improprieties at the hearing or ground for disciplinary appeal was the same as the claim asserted in civil rights action). That, however, is not this case.

Staton appealed his disciplinary finding on the ground that he was not informed about two witnesses. Administrative Appeal at 1. His claim here is the alleged use of excessive force. Because the ground for the disciplinary appeal and the instant claims are different, Staton was required to file an administrative remedy in accordance with Directive 9.6 using form CN9602. As he did not do so, Staton did not properly exhaust his administrative remedies. *See, e.g., Jordan v. Gifford*, No. 3:19-cv-1628(CSH), 2023 WL 2895883, at *4 (D. Conn. Apr. 23, 2023) (holding that inmate did not exhaust administrative remedies on claim for improper decontamination by filing administrative segregation appeal under Directive 9.6(8) and disciplinary appeal under Directive 9.6(10) instead of a grievance under Directive 9.6(6)).[6]

In his filings in opposition to Defendants' motion for summary judgment, Staton addresses his failure to exhaust administrative remedies. Among other things, he alludes to an ongoing conspiracy amongst Defendants, to "thwart" his efforts at exhaustion under the PLRA. *See* Pl.'s Opp'n, ECF No. 60 at 1, 5–6. He claims that prison officials harassed and retaliated against him for engaging in prior lawsuits, and the threat of retaliation deterred him from filing a grievance. In

---

[6] In his "Motion to Strike Objection to Defendants Summary Judgment," Staton argues that "Appeals of Administrative decisions utilizing Form CN9606 are not recorded on the grievance log when an appeal is basically a grievance to judicial misconduct and should be substantiated as such as the very same application for a grievance is found to be on the very same form." Pl.'s Mot. ("Pl.'s Second Opp'n"), ECF No. 64 at 3. The Court interprets this as an argument that Staton's Administrative Appeal of his disciplinary hearing is the equivalent of a grievance for his excessive force and sexual assault claims from October 19, 2021. As discussed above, this argument is directly contradicted by the decisions cited above and is not further addressed.

his submission titled "Motion to Strike Objection to Defendants Summary Judgment," he alleges a scheme in which department of corrections employees intentionally provided inmates with outdated versions of grievance applications to "thwart inmates from taking advantage of the grievance process." Pl.'s Mot. ("Pl.'s Second Opp'n"), ECF No. 64 at 1–2. In support of this claim, Staton cites to a November 8, 2023 "observation" by "this court" stating the same. *Id*. This Court made no such observation, either on that date or any other. To the extent that Staton is referencing a finding made by another court in a separate matter, he did not provide a citation or any other means for this Court to review it.[7]

Staton also attempts to tie his use of an outdated grievance form in November 2021 (on matters not before this Court) to other instances where his grievance forms were allegedly mishandled, to include a grievance he claims to have filed on August 16, 2022, which related to disciplinary processes on August 9 and 10, 2022. *Id*. at 9. This assertion has no bearing on the exhaustion issue here. He also claims that "during COVID-19 quarantines grievances were placed into the mail bags to forward grievances in 2020 and 2021 and 2022 which are not on Charles Shea's listings, which I never received receipts for." *Id*. This is an apparent attempt to contradict the Administrative Remedies Coordinator at Carl Robinson Correction Institute's, assertion that Plaintiff did not file a grievance in response to this incident although he had access to the grievance process. *See also* Decl. of Charles Shea ("Shea Decl."), ECF No. 53-4.

In any event, Staton's unsworn assertions are insufficient to overcome Defendants' motion for summary judgment. He provides only a conclusory recitation of the *Ross* availability factors,

---

[7] In this filing, Staton also seeks various forms of relief related to facts and claims not before the Court, to include a request to consolidate this case with others that he is litigating or has litigated. To the extent that Plaintiff seeks to inject additional issues and claims into this litigation, he may not do so, and these claims are not further discussed. *See Brockett v. Lupis*, No. 3:21-CV-355 (KAD), 2022 WL 1658835, at *6 (D. Conn. May 25, 2022), *appeal dismissed* (Aug. 30, 2022) ("[Plaintiff] cannot amend his complaint to assert new claims in a memorandum in opposition to a motion for summary judgment") (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).

discussed above, without providing any evidentiary support so as to raise a genuine issue of material fact. His allegations of a wide-ranging conspiracy and/or retaliation against him personally are wholly conclusory. *See Jackson* 549 F. Supp. 2d at 210. Indeed, Staton's claims of intimidation, retaliation, and the general unavailability of the grievance process are belied by the fact that he successfully filed grievances both before and after the October 19 incident (*see* Defs.' Local Rule Stmt. at 1–2, ¶ 6), and by his own statement that corrections officers quickly informed him when he filed his administrative appeal on an outdated form (*See* Am. Compl. at 6–7). In his deposition, Staton did not testify that he felt intimidated or was afraid to file a grievance around the time of the October 19 incident. Rather he testified that it was his intent to grieve "the whole incident" via an appeal of his November 2, 2021, disciplinary hearing. Staton Dep. at 8–12. In sum, Staton's unsupported allegations as to the alleged unavailability of administrative remedies for his claim of excessive force do not overcome Defendants' properly supported motion for summary judgment. *Weinstock*, 224 F.3d at 41.

*Sexual Harassment or Assault*

Staton's second claim is for sexual harassment or assault. At the time of the incident, Directive 9.6 provided that "[c]omplaints alleging sexual abuse or sexual harassment must be reported in accordance with Administrative Directive 6.12 ... and shall be investigated by the PREA Investigation Unit." Dir. 9.6(8). Directive 6.12 identifies five ways for Connecticut inmates to report incidents of sexual abuse or sexual harassment: (1) verbal or written report to a staff member with any verbal report promptly documented, (2) calling the PREA hotline, (3) submitting an inmate request, (4) submitting an anonymous note, and (5) calling the Connecticut State Police. Defs.' Mem. Ex. E ("Dir. 6.12"), Dir. 6.12(12)(A), ECF No. 53-8 at 10.

The defendants have submitted evidence demonstrating that there is no record of Staton

reporting the alleged sexual assault. Defs.' Mem. Ex. F, Andrade Decl., ECF No. 53-9 at 2. In his deposition, he conceded that he did not file an inmate request regarding the alleged sexual assault. Although Staton acknowledged that Directive 6.12 listed several ways to report claims of alleged sexual assault, he did not indicate that he had used any of them, instead stating that he preferred to just litigate the matter. Staton Dep. at 16–17.

Staton's filings in opposition align with his deposition. In his filing at ECF No. 64, Staton describes a December 2019 incident in which he attempted to report a prior allegation of sexual assault via the PREA hotline but was met with skepticism both from department of corrections personnel as well as a state trooper. Pl.'s Second Opp'n, ECF No. 64 at 9–10. According to Staton, he was subsequently "given a disciplinary report for falsely reporting an PREA incident." *Id*. at 10. As a result of this, Staton stated that he "chose to simply litigate" the instant case. *Id*. Staton's own deposition and filings show that administrative remedies for sexual assault or harassment were available, that he had used them in the past, and that he simply elected to forgo them before filing this action. Thus, Staton failed to exhaust his administrative remedies on this claim as well.

Defendants' motion for summary judgment is therefore granted for failure to exhaust administrative remedies on any claim remaining in this action.

**Conclusion**

Defendants' motion for summary judgment [**ECF No. 53**] is **GRANTED**. To the extent that Staton sought additional relief in his subsequent filings [**ECF Nos. 64–66**], those requests are **DENIED**. The Clerk is directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of April 2024.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE